IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 04-17 Erie |
| | ) |
| DARRELL W. SIVIK | ) |

**GOVERNMENT'S RESPONSE TO**
**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

AND NOW comes the United States of America, by and through its counsel, Mary Beth Buchanan, United States Attorney for the Western District of Pennsylvania, and Marshall J. Piccinini, Assistant United States Attorney for said district, and sets forth the following:

1. On May 11, 2004, the grand jury returned a superseding indictment charging Mr. Sivik with two counts of unlawfully transferring a machinegun to other individuals, in violation of Title 26, United States Code, Section 5861(e), and two counts of unlawfully possessing ten machineguns which were not registered to him in the National Firearms Registration and Transfer Record, in violation of Title 26, United States Code, Section 5861(d). On January 21, 2005, Sivik entered a guilty plea to counts three and four of the Superseding Indictment. Sentencing is scheduled for October 4, 2005.

2. On September 22, 2005 the United States received Sivik's Memorandum in Aid of Sentencing in which he requests a sentence below the guideline range recommended by the United States

Sentencing Guidelines (U.S.S.G.). In support of his request, Sivik cites his health as a basis for a reduced sentence. The United States opposes Sivik's request for leniency beyond that already afforded him for his acceptance of responsibility.

       3.   Before addressing Sivik's claim that his health condition should result in a sentence below the sentencing guideline range, a review of the facts and circumstances surrounding Sivik's conviction is in order. As the court found in response to Sivik's appeal of the detention order in this case, Mr. Sivik, leader of the Braveheart Militia, committed his machinegun offenses in the context of his preparation for an armed conflict with the United States government and law enforcement. Sivik didn't just spew his anti-government rhetoric to his Braveheart Militia followers, but rather, he followed up on his anti-government rhetoric and armed himself and others for a confrontation with authorities. The Court's Memorandum Opinion and Order addressing Sivik's appeal of the magistrate's detention order is attached as Exhibit 1.

       4.   The facts in this case reflect that Sivik had buried weapons on his two properties, illegally manufactured and distributed weapons to others, and taught others how to package and bury their weapons so that they would be prepared when a conflict occurred. The nature of the serious steps which Sivik took in furtherance of his desired armed conflict, and the irrationality in

his thought processes and his actions, provide disturbing evidence to the court concerning the nature of the offense.

5. Although Sivik is not charged in any way with his views concerning the government, when those views are coupled with violations of federal gun laws, the seriousness of Sivik's offenses are magnified.

6. As the court may recall from its review of the detention hearing transcript, the government called as a witness Special Agent Maurice Ferentino, an agent of the Bureau of Alcohol, Tobacco, Firearms and Explosives and a member of the Western District of Pennsylvania Joint Terrorism Task Force. In the course of his testimony, Special Agent Ferentino testified that in May of 2003, Sivik becoming paranoid that law enforcement officers had been hiding in the vicinity of his property. Sivik then made statements that he would simply shoot the law enforcement officers for trespassing and ask questions later (Transcript p. 18). Special Agent Ferentino recounted further that on several occasions Sivik had explained that he planned on responding violently to any law enforcement action on his property (Transcript p. 18). The evidence also showed that in addition to his property and gunsmithing shop located in Meadville, Pennsylvania, Sivik also owns a camp on a remote property in Forest County, Pennsylvania. The investigation disclosed that Sivik directed members of his militia organization that his property in Forest County would be a rally point to which the members would retreat when the war with

the government began.  The testimony showed further that Sivik bragged that his remote property contained heavy weaponry (Transcript p. 19).  Further, in June of 2003, Sivik engaged in a conversation in which he stated, "It was time to use the ammo box rather than the ballot box." (Transcript p. 19).  Also, on numerous occasions, Sivik was heard to indicate, with regard to law enforcement, that it was time to "shoot the bastards."  Special Agent Ferentino testified concerning the multiple machineguns that were found both on Sivik's property in Meadville and in Forest County (Transcript pp. 20 and 21).

       7.  The testimony also provided information concerning Sivik's attitude regarding the United States government and federal statutory law.  When Sivik was arrested on March 25, 2004, he provided specific details to Special Agent Ferentino concerning his rejection of the authority of federal law.  Sivik stated that he was a strict constitutionalist and indicated that he did not recognize any type of laws passed after the Constitution (Transcript p. 22).  The testimony also showed, as the allegations in the Indictment also set forth, that Sivik not only possessed the machineguns for himself, he also manufactured those machineguns and distributed them to other individuals who were tied to his militia organization (Transcript pp. 22).  In addition, the testimony showed that Sivik had provided machineguns to a federal fugitive by the name of Daniel Leveto who was on the run from a federal tax

Indictment against him pending before this court (Transcript pp. 23 and 24).

8. Special Agent Ferentino also testified that law enforcement had great concern that Sivik's release would pose a safety risk to law enforcement personnel and to the community at large (Transcript p. 25). Special Agent Ferentino testified that special measures had to be taken in order to secure the arrest of this defendant and the execution of the search warrants at his residence. As Special Agent Ferentino testified, because of Sivik's steps to arm himself and prepare for armed conflict with the government, it became necessary in the course of this investigation to activate the ATF special response team which is a highly trained group of special agents called to execute and enforce actions against certain individuals (Transcript p. 37).

9. These facts provide a realistic background of the nature and seriousness of Sivik's conduct leading to his conviction.

10. As this court recognized at the earlier sentencing hearing of Terrance Willaman, Docket Number 04-28 Erie, which stemmed from Sivik's unlawful transfer of a machinegun to Willaman, the crimes committed by other defendants in this case seemed to stem from fool-hearty guidance from Sivik. The court stated at the end of Willaman's sentencing hearing: "I think Mr. Willaman was at least misguided by, I don't know who was the leader here, whether it was Sivic (sic), or Bilunka, or somebody else, but I think he

was badly misled and misguided by some or all of those gentlemen." (Sentencing Hearing Transcript, U.S. v. Willaman, p. 31, attached as Exhibit 2). The court was correct in observing that another individual was involved in perpetuating the criminal conduct of the other defendants caught up in this case. That other individual is primarily Darrell Sivik. It is Darrell Sivik who hosted the Braveheart Militia anti-government meetings at his residence. It is Darrell Sivik who discussed machineguns with his group. It is Darrell Sivik who had the knowledge, skill and expertise to manufacture machineguns. It is Darrell Sivik who disregarded his obligations as a federally licensed firearms dealer. It is Darrell Sivik who sold the machineguns to his followers. And it is Darrell Sivik who provided guidance to his associates on how to hide the machineguns from law enforcement after these unlawful weapons were purchased. Each of the other defendants were clearly criminally responsible for their knowing possession of these unlawful weapons. However, if not for Darrell Sivik, the other defendants may not have had the ready access to these machineguns as they did by being affiliated with Sivik.

11. Here, the other defendant's who were affiliated with Sivik have already been sentenced. George Bilunka received a sentence of 33 months in prison. Terrance Willaman received a sentence of 27 months in prison. Daniel and Chester Morrell received sentences of 18 months in prison and 3 years of probation, respectively. Sivik's current health condition should not result

in him being sentenced to a shorter term of imprisonment than the sentence received by his co-defendant, George Bilunka.

12. Sivik's current health condition should not be not a basis for leniency because the Federal Bureau of Prisons can adequately address his medical needs. Sivik should be sentenced consistent with the interests of justice and consistent with the recommended guideline sentence range. I have attached as Exhibit 3, a copy of a letter from the Health Systems Administrator of the Federal Bureau of Prisons. This letter confirms that after Sivik is committed to the custody of the Bureau of Prisons, his health condition will be reviewed by the Office of Medical Designations and a proper prison facility designation, including a possible designation to one of the nation's seven medical referral centers, will be made after fully considering Sivik's health condition.

13. In May 2005 when the Federal Bureau of Prisons reviewed Sivik's available medical records, the Health Systems Administrator determined that it is equipped to provide appropriate medical care to Sivik. It appears that Sivik's health has significantly improved since that time.

14. All Bureau of Prisons facilities are accredited by the Joint Commission on Accreditation for Health Care Organizations, contract with local medical centers for specialized medical treatment, and can seek out the services of trained surgical specialists if the need arises.

15. A review of the factors that this court is required to consider under Title 18, United States Code, Section 3553, should lead this court to agree with the advisory guideline range of 30-37 months of imprisonment. Under section 3553 this court must consider among other factors, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence to criminal conduct. A sentence at the high end of the sentencing guideline range of 37 months imprisonment, is appropriate to reflect the seriousness of the offense, to promote a respect for the law, to provide just punishment of Sivik, and to afford adequate deterrence to others who seek to unlawfully possess machineguns.

                                        Respectfully submitted,

                                        MARY BETH BUCHANAN
                                        United States Attorney

                                        <u>s/Marshall J. Piccinini</u>
                                        MARSHALL J. PICCININI
                                        Assistant U.S. Attorney
                                        PA ID No. 56362