ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| vs. ) | Crim. No. 04-17 Erie |
| ) | |
| DARRELL SIVIK ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER

Presently before the court is Defendant Darrell Sivik's Motion for Review and Revocation of Detention Order (Doc. 22), in which he seeks to be released pretrial. The Government has filed a response opposing the appeal (Doc. 32).

### Background

A federal grand jury returned a superseding indictment on May 11, 2004 charging the Defendant with two counts of unlawfully transferring a machine gun to other individuals, in violation of 26 U.S.C. § 5861(e), and two counts of unlawfully possessing ten machine guns, which were not registered to him in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d).

The government sought to detain the Defendant and a detention hearing was held on March 29, 2004. At the detention hearing, the government presented the testimony of Special Agent Maurice Ferentino of the Bureau of Alcohol, Tobacco, Firearms, and Explosives. The Magistrate Judge entered an Order and a supporting Opinion granting the government's request to detain Defendant. (Opinion on Detention and Order, March 29, 2004, Doc. 9). On May 14, 2004, Defendant filed the instant motion seeking review and revocation of the Magistrate Judge's Order of Detention.

### Discussion

"A defendant detained by a magistrate judge may seek review before the district court. 18 U.S.C. § 3145(b). We review the magistrate judge's decision *de novo*. United States v. Chagra,

EXHIBIT 1

850 F.Supp. 354, 356 (W.D.Pa. 1994). Following a *de novo* review of the pleadings, evidence and transcript of the detention hearing we will deny defendant's motion to revoke detention order and for evidentiary hearing. United States v. Burks, 141 F.Supp. 2d 1283, 1285 (D.Kan. 2001) ("*De Novo* review does not require a *de novo* evidentiary hearing").

Pursuant to the Bail Reform Act of 1984 21 U.S.C. §§ 3141-3150, a defendant must be released pretrial unless the magistrate judge determines that "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 21 U.S.C. § 3142(b). In making this determination, the judicial officer is to consider the "'available information' on the following factors: the nature and circumstances of the offense, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence; the history and characteristics of the person; and the nature and seriousness of the danger to any person or the community posed by a release on conditions." Burks, 141 F.Supp.2d at 1285-86; 18 U.S.C. § 3142(g).

**a.**

The Magistrate Judge found "by clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of the community pending trial," and thus ordered that the Defendant be detained. (Opinion on Detention, at 1.) In her Opinion, the Magistrate Judge considered the four factors set forth in 18 U.S.C. § 3142(g), and found that each weighed against release. (Opinion on Detention, at 3-5.)

With respect to the nature and circumstances of the offense, the Magistrate Judge noted the Defendant conceded that a charge of unlawful manufacture and possession of a firearm in violation of 26 U.S.C. 5681 is considered a "crime of violence" under section 3142(f)(1)(A) thereby authorizing a detention hearing. (Opinion on Detention, at 3; see also Transcript of Detention Hearing, March 29, 2004, at 50-51.) However, The Magistrate Judge explains that the Defendant argued that this factor did not weigh against him because in this case no actual violence was used and Mr. Sivik never harmed anyone with his weapons. (Opinion on Detention, at 3; see also

2

Transcript of Detention Hearing, at 51.) Nonetheless, the Magistrate Judge held this factor to weigh against pre-trial release noting that Mr. Sivik's action went beyond anti-government rhetoric. The Magistrate Judge considered that the circumstances of the offenses demonstrated that Mr. Sivik took "serious steps in furtherance" of an eventual armed conflict with the government, including arming himself and others, burying weapons on his property, and teaching others how to package and bury weapons. (Opinion on Detention, at 3.)

The Magistrate Judge also concluded that the weight of the evidence against Mr. Sivik is strong. (Opinion on Detention, at 4.) As for the history and characteristics of the Defendant, the Magistrate Judge noted his lack of criminal record, strong family ties and support in the Meadville area, and his maintenance of his business. However, she found that his character and conduct weighed against him. In particular, she notes his planning for a violent confrontation with the government, serious threats to law enforcement officials, and his actions of manufacturing, collecting and distributing illegal weapons in support of a confrontation. (Opinion on Detention, at 4.) In addition, she notes evidence of Mr. Sivik's contact with a fugitive indicating that Mr. Sivik had moved and buried weapons at the request of the fugitive. (Opinion on Detention, at 5.) Finally, the Magistrate Judge stated that it is unlikely that [Mr. Sivik] would adhere to an order with release limitations from a United States Court" because Mr. Sivik does not recognize or follow the laws of the United States. (Opinion on Detention, at 5.)

Finally, with respect to the nature and seriousness of the danger to any person or the community posed by a release on conditions, the Magistrate Judge stated in part as follows:

> . . . Defendant has colleagues with like-minded views of a violent confrontation with government officials. he has planned with them and he has helped arm them. There is no way of knowing how he might be aided in a stand-off with authorities once released. He does not recognize the laws of the Untied States or those that work to enforce them, and he has threatened their lives with more than words. There is no room for error here.

(Opinion on Detention, at 5.)

3

b.

Mr. Sivik first argues that there is no basis for a detention hearing because he was not charged with a crime of violence. Specifically, Mr. Sivik argues that the offenses he is accused of are not "crimes of violence" as set forth in 18 U.S.C. § 3142(f)(1)(A) of the Bail Reform Act. Section 3142(f) sets forth when a hearing on detention must be held. This issue was not before the Magistrate Judge as defense counsel at the detention hearing conceded that unlawful manufacture and possession of a firearm in violation of 26 U.S.C. 5681 is considered a "crime of violence" under section 3142(f)(1)(A). (Transcript of Detention Hearing, at 50-51.)

We disagree with Mr. Sivik's position. In our view, the possession of unregistered firearms presents a substantial risk of violence or physical injury to others and thereby is a "crime of violence" for purposes of the Bail Reform Act, section 3142(f)(1)(A). This is a view shared by many other courts. "Consistently, a number of district courts have held that a charge of possession of an unregistered firearm is a crime of violence for Bail Reform Act purposes." United States v. Powers, 2004 WL 1109902, *6 (W.D.Va. April 16, 2004) (citing cases).

Under the Bail Reform Act, while pre-trial release is the rule, Congress also sought to ensure that dangerous and potentially dangerous defendants were detained in order to protect any other person and the community. A detention hearing does not equate to detention of a defendant. "Holding a detention hearing merely permits the court 'to peek behind the categorical treatment of the offense to determine whether conditions of release exist that will ensure the safety of the community.'" Powers, 2004 WL 1109902, *4 (quoting United States v. Spry, 76 F.Supp.2d 719, 721-22 (S.D.W.Va.1999)).

In contrast, to conclude that a section 5861 offense is not a "crime of violence" removes it as a basis to permit the government to move for a detention hearing under 3142(f)(1)(A). Such a conclusion would essentially equate to release on bond even if a particular defendant was a dangerous defendant for which there were no conditions or combination of conditions of release that could reasonably protect the safety of the community and others. This is especially critical at

4

the early stage of a criminal case where the risk to the community is potentially high at a time when the court has much less information than it does at a sentencing hearing. See United States v. Dillard, 214 F.3d 88, 103 (2nd Cir.2000)( quoting United States v. Campbell, 28 F.Supp.2d 805, 809 (W.D.N.Y.1998)

We therefore conclude that "a detention hearing is not only appropriate under § 3142(f)(1)(A), it is a prudent and reasonable step necessary for the court to adequately . . . consider and assure the safety of other persons and the community." Powers, 2004 WL 1109902, *5.

c.

Next, Mr. Sivik argues that pretrial release is warranted based on consideration of his history and characteristics and the availability of conditions of release that would reasonably assure the safety of others and the community.

In support of his release he states that he is a life-long resident of Meadville, has no prior criminal history, he has run for political office in the past, and has maintained his own business, Sivik's Gunsmithing. (Defendant's Motion for Review and Revocation of Detention Order, at 4.) He further states that he can be placed on electronic home monitoring, be restricted to his residence 24 hours per day seven days per week, and that his family would remove all weapons from his home. Under these conditions, Mr. Sivik argues that any threat to the safety of the community would be negligible or non-existent.

We note that Mr. Sivik does not offer new evidence in support of his release, nor does he challenge the Magistrate Judge's primary findings of fact and reasons for detention. He does not elaborate on the nature and circumstances of the offense beyond his legal argument that the offenses he is charged with are not "crimes of violence" within the meaning of the Bail Reform Act. Mr. Sivik also does not discuss the weight of evidence, apparently conceding that this factor weighs against him. While he does argue that his history and characteristics in conjunction with certain conditions favor release, he does not address the substantive facts and reasons given by the

Magistrate Judge regarding the nature and seriousness of the danger posed by a release on conditions.

The testimony and evidence presented at the hearing showed the following. Mr. Sivik was a self-proclaimed commanding officer of the Braveheart Militia Company. (Transcript of Detention Hearing, at 17.) An undercover investigation of Mr. Sivik revealed that Mr. Sivik claimed to have seen law enforcement officers hiding on his property, and that he would shoot them for trespassing and ask questions later. (Transcript of Detention Hearing, at 18.) Mr. Sivik also indicated that he planned on a violent response to any law enforcement action. (Transcript of Detention Hearing, at 18.) In addition, Mr. Sivik had directed the members of the Braveheart Militia Company that his remote property in Forest County, Pennsylvania would serve as a base to which members would retreat when the war with the Government began. (Transcript of Detention Hearing, at 18-19.) Mr. Sivik maintained heavy weaponry including multiple machine guns at his remote property. (Transcript of Detention Hearing, at 5,19, 20-21.) The investigation also revealed that Mr. Sivik had stated the time was right to use the ammo box rather than the ballot box, and it was time to "shoot the bastards" in reference to law enforcement officials. (Transcript of Detention Hearing, at 19.)

Mr. Sivik is a federally licensed firearms dealer and has a federal license to lawfully possess and transfer or sell firearms at his Sivik's Gunsmithing business. However, he manufactured and distributed to others fully automatic machine guns in violation of federal law. (Transcript of Detention Hearing, at 22.) Mr. Sivik stated that he was a strict Constitutionalist and that he did not recognize any laws or regulations passed after the Constitution. (Transcript of Detention Hearing, at 22.) He also indicated that if had the opportunity to purchase surface-to-air missiles, he would. . (Transcript of Detention Hearing, at 23.) Mr. Sivik also manufactured firearms for a person who later became a fugitive and at the direction of the fugitive, Mr. Sivik transferred the weapons. (Transcript of Detention Hearing, at 23-24.) Agent Ferentino testified that he was concerned that

Mr. Sivik's release would pose a safety risk to law enforcement personnel and to the community. (Transcript of Detention Hearing, at 25.)

Our review of the testimony and evidence supports the Magistrate Judge's findings and her detention order. Thus, we find that the government established by clear and convincing evidence that there are no conditions or combination of conditions that can be imposed that would reasonably assure the safety of the community.

While Mr. Sivik's history and characteristics do present much in his favor, the potential danger he presents based on other evidence of record outweighs the positive factors. In his favor Mr. Sivik has no criminal record, has longstanding and deep ties to the Meadville area, has maintained a business in the community for many years, and has the support of family and friends.

While the fact that Mr. Sivik is a federally licensed firearms dealer and has a federal license to lawfully possess and sell firearms weighs in his favor in general, the evidence also shows that he purposefully circumvented federal firearms laws. Similarly, while Mr. Sivik has no prior criminal history, he has forcefully expressed his belief that firearms laws and regulations passed after the Constitution are not in fact valid and thus he is convinced that he has not violated those laws. In addition, Mr. Sivik's anti-government statements and threats to law enforcement officials by themselves are not the reason for detention, but combined with his conduct show a potential threat of danger.

Despite the trust and responsibility that goes with a federal firearms license Mr. Sivik has purposefully circumvented federal firearms laws. On numerous occasions he has stated that he would not hesitate to shoot law enforcement officials in the event that they sought to apprehend him. That he did not do so when apprehended in this case is the result of the foresight and planning of the agents conducting arrest who knew of the potential for violence when arresting Mr. Sivik. Thus, Mr. Sivik was unaware that law enforcement officials were going to arrest him, he was purposely stopped while he was in his vehicle and not in his gun shop so as to not permit him to act upon his stated threats.

He believes that a violent confrontation with government officials is likely and has indicated that such a confrontation may occur if law enforcement officials attempt to apprehend him. He has taken concrete action in planning for such a confrontation by circumventing federal firearms laws, unlawfully transferring numerous firearms to others, and burying loaded firearms on his property. He has instructed other like-minded individuals how to prepare and bury loaded firearms for an eventual violent confrontation and explained to others his plan for him and others to retreat to his remote property, which is prepared with firearms and related materials for the purpose of defense in a violent confrontation with the government.

The testimony and evidence is clear and convincing that if released under any conditions Mr. Sivik would not obey conditions of release contrary to his belief of his right to possess firearms, that he has the skill and resources available to him to obtain and manufacture dangerous firearms, that other individuals support him and would assist him, and that the potential for danger to the law enforcement officials and the community would be extremely high.

We find, as did the Magistrate Judge, that there is a serious risk that the Defendant will endanger the safety of another person or the community. We further find, as did the Magistrate Judge, that the government established by clear and convincing evidence that there are no conditions or combination of conditions that can be imposed that would reasonably assure the safety of the community. Thus, detention is warranted. Because we find that detention is necessary we will deny the request to revoke the detention order. As stated previously, it was not necessary to hold an evidentiary hearing as we are able to make a thorough *de novo* review on the basis of the transcript and evidence at the detention hearing, as well as a review of all other evidence in the record.

### Conclusion

We have reviewed the transcript from the detention hearing and find no testimony or evidence to support Mr. Sivik's assertion that his release under conditions would render any threat to the safety of the community negligible or non-existent. Based on the foregoing and our *de novo*

review of the testimony and evidence at the detention hearing, we find that clear and convincing evidence demonstrates that if the defendant is released under any conditions he will present a danger to others and the community. The testimony and evidence establish by clear and convincing evidence that there are no conditions or combination of conditions that can be imposed which would reasonably assure the safety of other persons and the community. Accordingly, defendant will be detained pending trial.

## ORDER

AND NOW, to-wit, this __10th__ day of June, 2004, it is HEREBY ORDERED, ADJUDGED, and DECREED that Defendant Darrel W. Sivik's Motion for Review and Revocation of Detention Order (Doc. 22) be and hereby is DENIED, and the Magistrate Judge's March 29, 2004 Detention Opinion with Order 9Doc. 9) be and hereby is AFFIRMED.

IT IS FURTHER ORDERED that the Defendant remain in the custody of the Attorney General or his designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The Defendant shall be afforded reasonable opportunity for private consultation with counsel. Upon order of a court of the United States or request of an attorney for the government, the person in charge of the corrections facility in which the defendant is confined shall deliver the Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

*Maurice B. Cohill, Jr.*
Maurice B. Cohill, Jr.
Senior United States District Judge

cc:   Counsel of record