

U.S. Department of Justice

Federal Bureau of Prisons

Northeast Regional Office

U.S. Custom House
2nd & Chestnut Streets - 7th Floor
Philadelphia, PA. 19106

VIA FAX

RECEIVED
2005 JUN -9 P 2: 12
U.S. ATTORNEY'S OFFICE
ERIE PA

May 12, 2005

Marshall J. Piccinini, Esquire
Assistant U.S. Attorney
U.S. Attorney's Office for the
    Western District of Pennsylvania
17 South Park Row
Room A330
Erie, Pennsylvania 16501

    Re:  United States v. Darrell W. Sivik

Dear Mr. Piccinini:

    Thank you for your recent inquiry concerning the Federal Bureau of Prisons (BOP) ability to provide adequate health care for federal prisoners with significant, acute or chronic medical conditions.  Specifically, you have asked whether, based on the available information, the BOP can provide the necessary and appropriate care for Mr. Sivik should he be incarcerated in a federal correctional facility.

    I am only aware of Mr. Sivik's medical condition as described by the documents you provided this office, namely, a Presentence Investigation Report and a series of letter and medical reports.  The aforementioned documents suggest that Mr. Sivik has diabetes, hypertension, hyperlipidemia, congestive heart failure and chronic back pain secondary to degenerative joint disease.  He also is post status open heart surgery.

    If committed to the custody of the BOP, Mr. Sivik will be reviewed for designation by the Bureau of Prisons Office of Medical Designations.  At that time, a determination would be made as to the appropriate facility, either a medical referral center or a general population institution, in which to designate him.  Medical referral centers are prisons which provide in-patient care to seriously ill inmates.  The BOP has seven of these centers throughout the United States.  General population institutions are non-medical prisons.  However, every general population institution is equipped to deal with medically ill inmates.  Each of these institutions run a number of chronic care clinics whose purpose it is to provide routinely scheduled quality care to medically ill inmates, as well as to stay

**EXHIBIT 3**

cognizant of any changes in medical conditions that may arise. Every general population institution has a diabetic care clinic, an infectious disease care clinic, a hypertension care clinic, a cardiac clinic, and a pulmonary clinic. Inmates enrolled in these clinics are seen at a minimum on a quarterly basis, and more often if medically necessary. Based on recent data obtained, the Bureau of Prisons houses over 165,000 inmates, including 18,877 with hypertension, 4,016 with hyperlipidemia, and 1,121 with congestive heart failure.

Upon Mr. Sivik's arrival, health services staff would meet with him, perform a physical examination, and set up a treatment plan to meet his medical needs. Based on Mr. Sivik's medical history he will be placed in a chronic care clinic, so that his medical condition is closely monitored and treated. Moreover, the BOP has an extensive formulary which can provide Mr. Sivik with the medications he needs to control his medical conditions. Inmates are given their medication on a daily basis as many times as medically required. Depending on the type of medication and the institution, inmates either receive their medication through pill line, or in the alternative, by maintaining a supply of medication in their cell.

All BOP institutions are accredited by the Joint Commission on Accreditation for Health Care Organizations, which sets the medical, surgical, and psychiatric standards for hospitals nationwide. Additionally, each BOP institution contracts with medical centers in the local vicinity to provide specialized medical treatment. These community medical centers offer medically ill BOP inmates access to MRI, CT Scans, and other diagnostic tools, as well as access to radiation and chemotherapy. Further, some institutions, based on their location, have contracts with major medical centers. When medical emergencies and the need for surgical procedures arise, these major medical centers offer the Bureau a wide range of trained surgical specialists.

It is my opinion that the BOP will be able to provide appropriate medical care for Mr. Sivik. For your convenience, I have attached a general outline to explain how the Bureau designates prisoners with medical illnesses and to describe the medical services available within the Bureau. If I can offer any further information in this matter, please do not hesitate to contact me.

Sincerely,

Barbara J. Cadogan
Health Systems Administrator